IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KLEIN V. DIXON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DANIELLE KLEIN, APPELLANT,

V.

ZACHERY DIXON, APPELLEE.

Filed May 29, 2018.    No. A-17-1138.

Appeal from the District Court for Hall County: JOHN H. MARSH, Judge. Affirmed in part, and in part remanded with directions.

Vikki S. Stamm, of Stamm Romero & Associates, P.C., L.L.O, for appellant.

Jonathan M. Hendricks, of Dowding, Dowding, Dowding & Urbom, for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Danielle Klein appeals the order of the district court for Hall County which awarded custody, parenting time, and child support regarding the parties' minor child. We remand the cause to the district court for clarification as to summer parenting time and the tax dependency exemption, but affirm on all other issues.

## BACKGROUND

Klein and Zachery Dixon are the parents of a child who was born in 2013. The parties never married but continued their dating relationship until separating in May 2016. Klein filed a complaint for the determination of paternity, custody, and child support in June 2016. She requested legal and physical custody of the child subject to Dixon's parenting time. She also filed a motion for a temporary order in July. Dixon never filed an answer, but he appeared with counsel

- 1 -

at the hearing on the motion for temporary order, which was held on August 3. The district court entered an order on August 11, recognizing that since the parties separated in May, they had been exercising parenting time with the child on a weekly basis. Therefore, the court ordered that the joint physical custody arrangement continue and also awarded Klein primary legal custody at that time.

An initial custody hearing was held in May 2017. Afterwards, the district court entered an order informing the parties that it was considering whether joint legal and/or physical custody was in the best interests of the child. Because joint custody was not pled by either party, the court scheduled the matter for an evidentiary hearing in September.

The evidence presented at the May and September 2017 hearings revealed that between the time the child was born in 2013 and when the parties separated in May 2016, Klein and Dixon were both generally employed and participated in caring for their child. Klein admitted that Dixon is a good father who cares for his child and that Dixon and the child have a strong relationship. Dixon acknowledged that Klein is a good mother who takes good care of their child. Klein expressed concerns about Dixon's financial stability and employment history, and Dixon had concerns about Klein's current boyfriend and her history of moving in with men after dating for a short period of time.

Despite these concerns, the parties agreed that they had not argued over major issues regarding the child such as choosing a daycare or medical care and had been able to communicate and reach joint decisions. After they separated, the parties took it upon themselves to work out a weekly exchange of the child, and they worked together to accomplish their joint arrangement even during a period of time when Dixon moved to Kansas. They both testified that they are able to act responsibly and cooperate during their weekly exchanges of the child, they had not had any major problems since their separation, and they had been able to work together for the best interests of their child. According to Dixon, the joint custody schedule had been working well for all of them.

At the time of the September 2017 hearing, Klein had moved to Central City, Nebraska, and Dixon was living in Aurora, Nebraska; thus, they lived approximately 20 to 25 minutes apart. Klein admitted that the joint physical custody arrangement was working for the time being, despite their distance, but once the child began school, she thought it could become difficult for her and Dixon to get the child to school on time if the weekly arrangement continued. Dixon also acknowledged the potential difficulty with a joint physical custody arrangement and transporting the child to school.

Klein was living in a four-bedroom house in Central City with her current boyfriend. She was not working at the time but was attending college full time while relying on her boyfriend to support her. Klein and her boyfriend were expecting a child at the time of the hearing. During their relationship, there had been some physical altercations, and Klein's boyfriend had been arrested for driving under the influence and assaulting her. Klein's boyfriend testified at the hearing that he and Klein had broken up approximately 2 days earlier but that he expected that they could work out their problems and continue living together.

Dixon was living alone in a three-bedroom townhouse in Aurora. He was employed full time and had health insurance coverage for the child.

The district court subsequently entered an order finding that joint legal and physical custody was in the best interests of the child. The court noted that if the parties were living in the same area, the current custody arrangement could continue, but because of their distance, joint physical custody would become impossible once the child starts kindergarten. The court determined that Dixon had demonstrated a slightly greater degree of stability and has been a calming influence on the child. Therefore, the court determined that once the child begins kindergarten, primary custody would shift to Dixon, and Klein would be awarded parenting time every other weekend, extended school breaks during her weekends, every spring break, and alternating fall breaks. Holiday parenting time was outlined in an attached parenting plan. Klein was also ordered to pay child support. Klein now appeals to this court.

## ASSIGNMENTS OF ERROR

Klein assigns, consolidated and renumbered, that the district court erred in (1) granting affirmative relief to Dixon when he failed to file an answer and neither party pled for joint custody, (2) awarding Dixon primary physical custody and significantly reducing her parenting time once the child begins kindergarten, (3) failing to properly award holiday and summer parenting time, and (4) failing to allocate the tax dependency exemption.

## STANDARD OF REVIEW

Child custody determinations, and parenting time determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Thompson v. Thompson*, 24 Neb. App. 349, 887 N.W.2d 52 (2016). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id.*

Domestic matters such as child support and the child dependency tax exemption are entrusted to the discretion of trial courts. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). An appellate court reviews a trial court's determinations on such issues de novo on the record to determine whether the trial judge abused his or her discretion. *Id.*

## ANALYSIS

*District Court's Ability to Award Joint Custody.*

Klein argues that the district court erred in awarding the parties joint legal and physical custody of the child because she did not request joint custody and Dixon failed to file an answer to the complaint. Therefore, she claims that the court should have entered a default judgment in her favor. In the alternative, she asserts that because neither party pled for joint custody, the court lacked the authority to consider such an arrangement, and because Dixon did not file an answer, he is not entitled to affirmative relief. We find no merit to these arguments and conclude that the district court properly considered the issue of joint custody.

- 3 -

In a paternity action, a default judgment shall be entered upon a showing of service and failure of the defendant to answer or otherwise appear. Neb. Rev. Stat. § 43-1412(2) (Reissue 2016). This statute contemplates the filing of a motion for default judgment and a hearing at which evidence of service and failure to respond is presented. In this case, however, Klein never filed a motion asking the district court to enter a default judgment, nor did she raise that issue before the trial court. When a party raises an issue for the first time on appeal, we will disregard it because a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *First Express Servs. Group v. Easter*, 286 Neb. 912, 840 N.W.2d 465 (2013). Thus, we do not address this issue.

In the alternative, Klein argues that the district court was not permitted to award joint custody when she did not request it and Dixon did not file an answer. She claims that joint custody is permissible only when both parties request such an arrangement. We disagree.

In a paternity case subject to the Parenting Act where neither party has requested joint custody, if the court determines that joint custody is, or may be, in the best interests of the child, the court shall give the parties notice and an opportunity to be heard by holding an evidentiary hearing on the issue of joint custody. *State ex rel. Amanda M. v. Justin T.*, 279 Neb. 273, 777 N.W.2d 565 (2010). Thus, the fact that neither Klein nor Dixon requested joint custody did not preclude the district court from awarding such an arrangement. The court was simply required to notify the parties that it was contemplating joint custody and allow them the opportunity to present evidence on that issue. See *id*. The district court did so in the present case.

Additionally, although Dixon never filed an answer, he participated in the proceedings from the beginning. A trial court has an independent responsibility to determine questions of custody and visitation of minor children according to their best interests, which responsibility cannot be controlled by an agreement or stipulation of the parties. *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007). We have previously recognized that this public policy is embodied in Neb. Rev. Stat. § 42-366(2) (Reissue 2016), which specifically excepts agreements as to custody of minor children from being binding upon the court. See *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012). In that case, we held that like agreements made by a party, admissions made by a party's failure to answer requests for admissions cannot circumvent the trial court's duty to independently assess a child's best interests in determining the child's custodial arrangement. *Id*. We observed that in a custody case the real party at interest is the child rather than the named parties, and the technical rules of civil procedure cannot apply with equal force in a child custody case, because the sole determining factor in such a case must be the best interests of the child. *Id*.

Similarly here, it was the responsibility of the district court to fashion a custody arrangement that was in the best interests of the child. This is true regardless of the arrangement Klein requested in the complaint or a lack of pleading from Dixon. And as observed above, this independent responsibility allows the court to award joint custody despite the fact that neither party requested such an arrangement. Accordingly, the fact that Dixon failed to file an answer requesting a particular custody arrangement did not preclude the district court from awarding him affirmative relief, including joint custody.

- 4 -

Finally, with respect to joint custody, Klein contends that the district court erred when it determined that joint physical custody was in the best interests of the child. Upon our de novo review, we find no abuse of discretion.

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Erin W. v. Charissa W.*, 297 Neb. 143, 897 N.W.2d 858 (2017). The Nebraska Supreme Court has held that joint physical custody should be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars. *Id*. See, also, *Donald v. Donald*, 296 Neb. 123, 892 N.W.2d 100 (2017); *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007).

In this case, the undisputed testimony established that for the most part, Klein and Dixon are able to communicate with each other, cooperate while exchanging the child, and work together for the best interests of the child. Klein acknowledged in her brief that both parties agreed that the other party was a good parent, there were no concerns about abuse or neglect of the child, and the week on week off arrangement was workable while the child is not in school. Brief for appellant at 17.

In *Erin W. v. Charissa W., supra*, the Supreme Court upheld an award of joint custody, observing that the parties operated successfully under a joint custody arrangement pursuant to a temporary order for nearly a year, and there was nothing in the record suggesting the parties or the child experienced difficulty with the arrangement. The same is true here. From the time the parties separated in May 2016, they worked together to share custody of the child without court involvement, even during a time when Dixon resided in Kansas. Once the district court entered its temporary order in August continuing joint physical custody, the parties agreed that such an arrangement had worked out well for Klein, Dixon, and their child. As a result, we find no abuse of discretion in the district court's decision to award joint physical custody.

We note that Klein's argument focuses on joint physical custody and does not appear to challenge the court's award of joint legal custody. She notes the weekly arrangement and argues that she was the primary caretaker of the child and that Dixon "fits the mold of the non-custodial parent, but not the primary or joint custodian." Brief for appellant at 19. We therefore do not address whether the decision to award joint legal custody was an abuse of discretion other than as it pertains to the court's ability to consider joint legal custody, which we discussed above. As a result, this assigned error lacks merit.

*Changes Once Child Begins Kindergarten.*

Klein contends that the district court erred in determining that joint physical custody will no longer be feasible once the child starts kindergarten and in reducing her parenting time to every other weekend. We find no merit to these arguments.

As we observed above, child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's

determination will normally be affirmed absent an abuse of discretion. *Erin W. v. Charissa W.*, 297 Neb. 143, 897 N.W.2d 858 (2017).

Contrary to Klein's arguments, the decision to change the custody arrangement once the child begins kindergarten was not a reflection of Klein's parenting. Both parties agreed at the joint custody hearing that the weekly schedule they had been following would be much more difficult, if not unworkable, once the child began kindergarten. At that time, the parties lived in different communities which were approximately 20 to 25 minutes apart. Klein admitted that it would be difficult for her and Dixon to get the child to school on time with a 20- or 25-minute commute, and therefore, she did not think joint physical custody would work at that point. At the May 2017 hearing, Klein also opined that even upon beginning preschool, the child's best interests would be served by having one house during the school week so he had a set schedule and routine. Thus, we find no abuse of discretion in the decision to change the custody arrangement upon the child beginning school.

Klein also takes issue with the language in the court's order that "[i]f the parties were living in the same area, the current custody arrangement could continue with each having equal access to the child." She argues that the court could have incorporated a provision into the parenting plan wherein if the parties lived within a certain radius, the joint custody arrangement could continue. Brief for appellant at 24. She claims that the court is making assumptions for the future.

Contrary to Klein's argument, the court was basing its decision on the facts adduced at the September 2017 joint custody hearing. At that time, the parties resided some distance apart and planned to stay at their residences long term. Based on that fact and both parties' testimony that joint custody would be much more difficult once the child started kindergarten, the district court determined that joint physical custody would no longer be feasible at that time. If the court had incorporated a provision similar to that suggested by Klein, it likely would have been an impermissible conditional order. See *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). Rather than the district court providing for an uncertain event in the future, it entered its order based upon the facts before it. If Klein and Dixon move closer together at some point to where they believe joint physical custody would again be workable, they may request that the district court modify its order at that time.

Once the district court determined that a joint physical custody arrangement was no longer feasible, it was tasked with placing primary physical custody with either Klein or Dixon. The court found that the parties were doing a commendable job of parenting, but concluded that Dixon demonstrated a slightly greater degree of stability and has been a calming influence on the child. The court noted Klein's brief relationships and disturbances with her current boyfriend, with whom the status of her relationship was "up in the air." At the time of the joint custody hearing, Dixon resided alone in a three-bedroom townhouse and was working full time. Klein was going to school full time and relying on her live-in boyfriend to support her. Based on the record before us, we cannot find that the district court abused its discretion in finding joint custody unworkable once the child begins kindergarten and placing primary physical custody with Dixon at that time.

We also conclude that the parenting time awarded to Klein was not an abuse of discretion. The trial court has discretion to set a reasonable parenting time schedule. *Thompson v. Thompson*, 24 Neb. App. 349, 887 N.W.2d 52 (2016). The determination of reasonableness is to be made on

a case-by-case basis. *Id*. Parenting time relates to continuing and fostering the normal parental relationship of the noncustodial parent. *Id*. The best interests of the children are the primary and paramount considerations in determining and modifying visitation rights. *Id*.

We understand Klein's displeasure in the significant reduction of her parenting time. However, the parties admitted that the distance between their residences makes the exercise of parenting time more difficult. Awarding every weekend to Klein would be an unreasonable arrangement for Dixon, and additional weekday time would be difficult given the child's school schedule and distance between the parties. We note that in addition to alternating weekends, the district court awarded Klein extended school breaks during her weekends, spring break every year, and alternating fall breaks. Under the circumstances of this case, the district court did its best to fashion a workable parenting time arrangement. We therefore find no abuse of discretion.

*Holiday and Summer Parenting Time.*

Klein argues that the district court erred in failing to include specific holidays as set forth in Neb. Rev. Stat. § 43-2929 (Reissue 2016) and failing to award her additional parenting time in the summer. Contrary to Klein's assertion, the parenting plan attached to the court's order specifically provides for nine holidays, including dates and times, and is identical to the holiday schedule attached to Klein's proposed parenting plan. As a result, we find no error in the holiday parenting time schedule.

With respect to summer parenting time, the district court crossed out that particular section in its parenting plan. In its order, the court concluded that because joint physical custody would become impossible once the child started school, it was "left with the option of placing the child with one parent during the school year and with the other parent during the summer once the child is ready to start kindergarten." The court then placed primary custody with Dixon subject to Klein's parenting time. When calculating child support, the court indicated that once the child enters kindergarten, Klein would have approximately 120 days of parenting time. This appears to include an extended period in the summer. However, neither the parenting plan nor the order further discussed summer parenting time. We conclude that the order is unclear as to whether the district court intended that primary custody switch to Klein during the summer subject to Dixon's parenting time. We therefore remand the matter to the district court for clarification as to the summer parenting time schedule.

*Tax Dependency Exemption.*

Klein asserts that the district court erred in failing to award the tax dependency exemption for the child. We agree. Although Klein did not specifically request the tax dependency exemption in her complaint, she did ask at trial that she at least be allowed to claim the child in odd-numbered years.

A tax dependency exemption is an economic benefit nearly identical to an award of child support or alimony. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). In general, the custodial parent is presumptively entitled to the federal tax exemption for a dependent child. *Id*. But a court may exercise its equitable powers and order the custodial parent to execute a waiver

of his or her right to claim the tax exemption for a dependent child if the situation of the parties so requires. *Id*.

In the present case, the parties initially share joint physical custody of the child on a week on week off basis. Thus, there is no one "custodial parent" during that time. As such, we cannot presume that either party is entitled to the tax dependency exemption, and we therefore remand the matter to the district court for an appropriate allocation of the dependency exemption.

## CONCLUSION

We conclude that the district court did not abuse its discretion in considering and ordering joint custody, awarding Dixon primary physical custody once the child begins kindergarten and awarding Klein parenting time accordingly, or allocating holiday parenting time. We remand the cause to the district court for clarification as to the summer parenting time of each party once the child is in school and for consideration and allocation of the tax dependency exemption.

AFFIRMED IN PART, AND IN PART REMANDED WITH DIRECTIONS.